UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEWARDS OF THE MOKELUMNE RIVER, a California unincorporated nonprofit association,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF TRANSPORTATION and TOKS OMISHAKIN, in his official capacity as Director of the California Department of Transportation,<br><br>Defendants. | No. 2:20-cv-01542-TLN-AC<br><br>**ORDER** |

This matter is before the Court on Defendants California Department of Transportation ("Caltrans") and Toks Omishakin's ("Omishakin") (collectively, "Defendants") Motions to Dismiss. (ECF Nos. 5, 6.) Plaintiff Stewards of the Mokelumne River ("Plaintiff") opposed Omishakin's motion and filed a Statement of Non-Opposition to Caltrans's motion. (ECF Nos. 7, 8.) For the reasons set forth below, the Court GRANTS Caltrans's motion (ECF No. 5), and GRANTS in part and DENIES in part Omishakin's motion (ECF No. 6).

///
///
///

# I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff brings this action against Defendants for alleged violations of the Resource Conservation and Recovery Act (the "RCRA") and state nuisance law occurring on property near the Mokelumne River. (*See* ECF No. 1.) Specifically, Plaintiff refers to the area at which the Mokelumne River flows beneath State Route 99 near the Turner Road Exit in San Joaquin County, California, and abuts residences and other privately-owned real property (the "Turner Road Site"). (*Id.* at 2, 5.) Plaintiff contends Caltrans owns or controls real property at the Turner Road Site. (*Id.* at 2, 8.) The City of Lodi draws water from the Mokelumne River near the Turner Road Site for drinking water purposes. (*Id.* at 5.) The Mokelumne River at the Turner Road Site is also used for recreational purposes such as boating, swimming, and fishing. (*Id.*) Plaintiff brings this action on behalf of individuals and businesses that own property or reside in close proximity to the Turner Road Site, individuals who utilize the Mokelumne River near the Turner Road Site for recreational purposes such as boating, swimming, and fishing, and its own members, who have an interest in the environmental protection of the Mokelumne River and the associated watershed. (*Id.* at 3–4.)

Plaintiff alleges Caltrans and Omishakin, in his capacity as Director of Caltrans, have failed to "adequately secure, patrol, or otherwise reasonably maintain" the Turner Road Site, resulting in the presence of a transient population that has taken up residence there. (*Id.* at 4–5.) Plaintiff contends "the transient population's presence . . . has resulted in the discharge and disposal of solid waste" at the Turner Road Site and into the river,[1] causing an imminent and substantial danger to health or the environment as well as a public nuisance. (*Id.* at 5–7 (emphasis removed).) Plaintiff further alleges its members have been threatened with physical harm and have had their property destroyed by members of the transient population who suffer from mental illness, drug addiction, and other maladies and/or "individuals associated with the

---

[1] Plaintiff alleges the solid waste discharged at the Turner Road Site consists of human excrement, dog excrement, discarded used feminine hygiene products, discarded used condoms, drug paraphernalia including used hypodermic needles, discarded chemicals from drug-making operations, discarded auto parts, discarded bicycles and bicycle parts, discarded propane cylinders, discarded aerosol cans, discarded gasoline containers, and various discarded household goods. (*Id.* at 5.)

transient population" residing at the Turner Road Site.  (*Id.* at 4, 7.)  Plaintiff asserts these issues "could be abated" if Defendants installed fencing, barriers, live-feed cameras, and an around-the-clock security presence to prevent unauthorized access to the Turner Road Site; conducted a "thorough investigation of the Turner Road Site" with "industrial hygienists, toxicologists, and water quality experts to identify all solid waste at and emanating from the Turner Road Site"; and removed the solid waste previously discharged at the Turner Road Site.  (*Id.* at 7 (emphasis removed).)

Plaintiff filed its Complaint on August 3, 2020, seeking injunctive relief through two causes of action: (1) abatement of imminent and substantial endangerment pursuant to "RCRA § 7002(a)(1)(B)" and 42 U.S.C. § 6972(a); and (2) abatement of continuing public nuisance pursuant to California Civil Code §§ 3479, 3480.  (*Id.* at 8–10.)  Defendants filed separate motions to dismiss on September 3, 2020, pursuant to Federal Rules of Civil Procedure ("Rule" or "Rules") 12(b)(1) and 12(b)(6).  (ECF Nos. 5, 6.)  On September 17, 2020, Plaintiff opposed Omishakin's motion to dismiss (ECF No. 7) and filed a statement of non-opposition regarding Caltrans' motion to dismiss (ECF No. 8).  Omishakin filed a reply on September 24, 2020.  (ECF No. 11.)

**II.    STANDARD OF LAW**

A.    Federal Rule of Civil Procedure 12(b)(1)

A motion under Rule 12(b)(1) challenges a federal court's jurisdiction to decide claims alleged in the complaint.  Fed. R. Civ. P. 12(b)(1); *see also id.* at 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009) (holding the court may determine jurisdiction on a Rule 12(b)(1) motion unless "the jurisdictional issue is inextricable from the merits of a case") (internal citations omitted).

A Rule 12(b)(1) motion attacking subject matter jurisdiction may be either facial or factual.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  When the motion is a facial attack, the court only considers the allegations in the complaint and any documents attached to the complaint or referred to in the complaint.  *Gould Electronics Inc. v. U.S.*, 220 F.3d 169, 176 (3rd

Cir. 2000). The court accepts all the material factual allegations in plaintiff's complaint as true. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). "[J]urisdiction must be shown affirmatively, and that showing cannot be made by drawing from the pleadings inferences favorable to the party asserting it." *Shipping Financial Services Corp. v. Drakos*, 140 F.3d 129, 131 (2nd Cir. 1998) (citing *Norton v. Larney*, 266 U.S. 511, 515 (1925)).

When a Rule 12(b)(1) motion attacks the existence of subject matter jurisdiction "in fact," no presumption of truthfulness attaches to the plaintiff's allegations. *Thornhill Pub. Co., Inc. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). Rather, "the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). "Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence." *Robinson*, 586 F.3d at 685 (quoting *Rattlesnake Coal. v. E.P.A.*, 509 F.3d 1095, 1102 n.1 (9th Cir. 2007)).

        B.      <u>Federal Rule of Civil Procedure 12(b)(6)</u>

A motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Rule 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim . . . is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege

///

"'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570.

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In ruling on a motion to dismiss, a court may only consider the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122,

1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)); *see also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile).

### III. CALTRANS'S MOTION TO DISMISS

Caltrans moves to dismiss Plaintiff's claims pursuant to Rules 12(b)(1) and 12(b)(6). (ECF No. 5-3 at 8.) Plaintiff has filed a statement of non-opposition to Caltrans' motion to dismiss, thus conceding these arguments. (ECF No. 8 at 2); *see Tatum v. Schwartz*, No. S-06-01440 DFL EFB, 2007 WL 419463, at *3 (E.D. Cal. Feb. 5, 2007) ("[Plaintiff] tacitly concedes this claim by failing to address defendants' argument in her opposition."). Accordingly, Caltrans's motion to dismiss the claims asserted against it (ECF No. 5) is hereby GRANTED without leave to amend and Caltrans is DISMISSED from this action. *See also Nat. Res. Def. Council v. Cal. Dep't of Transp. (NRDC)*, 96 F.3d 420, 421, 423 (9th Cir. 1996) (affirming district court's dismissal of all claims against Caltrans as barred by the Eleventh Amendment); *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 865 (9th Cir. 2016) (noting plaintiff had viable claim under *Ex parte Young* doctrine against members of state entity in their official capacities, but claim against entity was barred by the Eleventh Amendment).

### IV. OMISHAKIN'S MOTION TO DISMISS

Like Caltrans, Omishakin seeks dismissal under both Rule 12(b)(1) and 12(b)(6).[2] Plaintiff opposes Omishakin's motion as discussed herein.

///

///

---

[2] In support of his motion, Omishakin requests the Court judicially notice the 2019 Homeless Census and Survey for San Joaquin County (Ex. A, ECF No. 6-1 at 3–5) and Executive Order N-23-30 issued by Governor Gavin Newsom (Ex. B, ECF No. 6-1 at 6–11). (*See* ECF No. 6-1.) Plaintiff does not oppose the request. (*See generally* ECF No. 7.) Under Federal Rule of Evidence 201, the Court may take judicial notice of facts "not subject to reasonable dispute" that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Such sources include public records produced by governmental entities. *See United States v. Esquivel*, 88 F.3d 722, 727 (9th Cir. 1996) (judicially noticing census data); *Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California*, 547 F.3d 962, 968 n.4 (9th Cir. 2008) (judicially noticing "records of state [entities] and other undisputed matters of public record"). Accordingly, the Court GRANTS Omishakin's request.

A. Federal Rule of Civil Procedure 12(b)(1)

Omishakin seeks dismissal under Rule 12(b)(1) on the bases that: (1) sovereign immunity bars Plaintiff's claims; (2) Plaintiff lacks standing; and (3) Plaintiff failed to provide the requisite pre-suit notice under the RCRA. (*See* ECF No. 6-3 at 11–21.) The Court will address each argument in turn.

### *i. Sovereign Immunity*

"The Eleventh Amendment of the United States Constitution prohibits federal courts from hearing suits brought by private citizens against state governments, without the state's consent." *NRDC*, 96 F.3d at 421 (citing *Hans v. Louisiana*, 134 U.S. 1, 15 (1890)). This immunity "extends to state agencies and to state officers, who act on behalf of the state and can therefore assert the state's sovereign immunity." *Id.* (citations omitted). Nevertheless, the Supreme Court established an exception to immunity in *Ex parte Young*, 209 U.S. 123 (1908), in which it held that the Eleventh Amendment does not bar claims seeking prospective injunctive relief against state officials to remedy a state's ongoing violation of federal law. 209 U.S. at 159–60.

> The doctrine of *Ex parte Young* is premised on the notion that a state [cannot] authorize a state officer to violate the Constitution and laws of the United States. Thus, an action by a state officer that violates federal law is not considered an action of the state and, therefore, is not shielded from suit by the state's sovereign immunity.

*NRDC*, 96 F.3d at 422.

In determining whether the *Ex parte Young* exception applies, the Court must inquire into whether "[1] [the] complaint alleges an ongoing violation of federal law and [2] seeks relief properly characterized as prospective." *Verizon Md. Inc. v. Public Serv. Com'n of Md.*, 535 U.S. 635, 645 (2002) (internal quotations and citations omitted); *see also Koala v. Khosla*, 931 F.3d 887, 895 (9th Cir. 2019) (emphasizing the requested relief must be prospective, not retrospective or compensatory). Importantly, claims brought under the doctrine of *Ex parte Young* are limited to suits for "prospective equitable relief, including any measures ancillary to that relief," but not "retrospective relief (such as damages)" that would require payment of funds from the state treasury. *See id.*; *Ariz. Students' Ass'n*, 824 F.3d at 865; *Porter v. Jones*, 319 F.3d 483, 491 (9th

Cir. 2003) (citing *Papasan v. Allain*, 478 U.S. 265, 277–78 (1986); *Edelman v. Jordan*, 415 U.S. 651, 664–68 (1974)). The inquiry into whether the *Ex parte Young* doctrine applies "does not include an analysis of the merits of the claim." *Verizon*, 535 U.S. at 646.

Here, the parties agree the State's Eleventh Amendment immunity is not abrogated by the instant claims, but they dispute whether the claims may nevertheless proceed against Omishakin (as he is sued in his official capacity as Director of Caltrans) under the *Ex parte Young* exception. Omishakin argues the Complaint does not sufficiently allege he violated the RCRA and seeks retrospective relief.[3] (ECF No. 6-3 at 11–15.) Plaintiff, by contrast, maintains Omishakin's violation of the RCRA is sufficiently pleaded and that the relief Plaintiff seeks is prospective in nature. (ECF No. 7 at 6–9.) The Court examines each element of the *Ex parte Young* test in turn.

### a) Ongoing Violation of Federal Law by State Official

The RCRA is a "comprehensive environmental statute that governs the treatment, storage, and disposal of solid and hazardous waste." *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 483 (1996). Its primary purpose is "to reduce the generation of hazardous waste and to ensure the proper treatment, storage, and disposal of that waste which is nonetheless generated, 'so as to minimize the present and future threat to human health and the environment.'" *Id.* (quoting 42 U.S.C. § 6902(b)). Plaintiff brings this action pursuant to 42 U.S.C. § 6972(a)(1)(B), which authorizes private citizens to bring suit under the RCRA against persons contributing "to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." (*See* ECF No. 1 at 1–2, 8); 42 U.S.C. § 6972(a)(1)(B); *see also Hinds Invs., L.P. v. Angioli (Hinds)*, 654

///

---

[3] Omishakin further argues that, even if the Court has jurisdiction over the RCRA claim (Claim One), supplemental jurisdiction is unavailable for Plaintiff's pendent state-law public nuisance claim (Claim Two). (ECF No. 6-3 at 12–13, 15 (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89 (1984)).) Plaintiff concedes its state-law claim is barred. (ECF No. 7 at 10); *see Tatum*, 2007 WL 419463, at *3. Accordingly, the Court DISMISSES Plaintiff's state law claim (Claim Two) without leave to amend and addresses the viability of Plaintiff's RCRA claim only. *Pennhurst*, 465 U.S. at 121; *see also Papasan*, 478 U.S. at 277 (*Ex parte Young* exception does not apply where challenged state official action is contrary to state law only).

F.3d 846, 848 (9th Cir. 2011) (noting the RCRA contains a provision permitting citizen suits in certain circumstances).

Omishakin argues Plaintiff fails to satisfy the first prong of the *Ex parte Young* doctrine because the Complaint fails to allege facts showing Omishakin has taken any affirmative action that violates the RCRA. (ECF No. 6-3 at 13.) In opposition, Plaintiff contends that no affirmative action is required to trigger the *Ex parte Young* doctrine. (*See* ECF No. 7–9.) Rather, mere ownership and control over the property on which the disposal is occurring is sufficient. (*Id.*) The Court is unpersuaded by Plaintiff's argument.

Controlling authorities discussing application of the *Ex parte Young* exception note the doctrine applies to enjoin a state official from enforcing a purportedly unconstitutional law with which the official has "some connection with enforcement," which suggests an affirmative action must be alleged. *See Confederated Tribes & Bands of Yakama Indian Nation v. Locke (Confederated Tribes)*, 176 F.3d 467, 469 (9th Cir. 1999); *Snoeck v. Brussa*, 153 F.3d 984, 987 (9th Cir. 1998) ("As *Ex [p]arte Young* explains, the officers of the state must be cloaked with a duty to enforce the laws of the state and must threaten or be about to commence civil or criminal proceedings to enforce an unconstitutional act."). Further, with respect to the duty to enforce, the Ninth Circuit indicates the public official must have a "special" and "fairly direct" connection with the enforcement of the challenged statute. *See Confederated Tribes*, 176 F.3d at 470 (requisite connection not established against governor, who was not responsible for operating the state lottery or determining where its tickets would be sold); *Snoeck*, 153 F.3d at 986 (noting "a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit"). Absent such connection, an action merely asserts a claim against a state official "as a representative of the State, . . . thereby attempting to make the State a party." *Confederated Tribes*, 176 F.3d at 469 (quoting *Ex parte Young*, 209 U.S. at 157).

Here, Plaintiff has not alleged a "special" and "fairly direct" connection between Omishakin and the enforcement of the RCRA. *See id.* at 470; *Ex parte Young*, 209 U.S. at 155–56. More importantly, the Complaint contains no allegations that Omishakin is specifically

9

responsible for enforcing the RCRA, or that Omishakin is a member of a "municipality," "intermunicipal agency," or "interstate agency" within the meaning of the RCRA tasked with the responsibility and authority to provide for the planning or administration of solid waste management. *See* 42 U.S.C. § 6903. Indeed, the Complaint asserts Omishakin is the Director of Caltrans, an agency "responsible for maintenance and operations of roadways comprising the California state highway system" (ECF No. 1 at 4), not the Department of Toxic Substances Control for the California Environmental Protection Agency, the state entity authorized by the United States Environmental Protection Agency to implement the RCRA in California. *See* Cal. Health & Safety Code §§ 58000–58018. Accordingly, the Court cannot say Plaintiff has established the requisite "connection" for the *Ex parte Young* doctrine to apply to the instant case.

Nor is the Court persuaded that a continuing violation of federal law by Omishakin may be established pursuant to "contributor liability" as defined under the RCRA.[4] Plaintiff argues the term "contribution" must be liberally construed to encompass passive inaction, such as the failure to take steps to safely and temporarily store waste and properly dispose of waste. (ECF No. 7 at 7–8.) However, Plaintiff identifies no controlling or persuasive authority that supports its definition of "contribute" or the contention that no affirmative action is needed.

To the contrary, the Ninth Circuit found that "'[c]ontributing' requires a more active role with a more direct connection to the waste, such as by handling it, storing it, treating it, transporting it, or disposing of it." *Hinds*, 654 F.3d at 851 (quoting with approval *Sycamore Indus. Park Assocs. v. Ericsson, Inc.*, 546 F.3d 847, 854 (7th Cir. 2008) ("The vast majority of courts that have considered this issue read [the] RCRA to require affirmative action rather than merely passive conduct . . . for handling or storage liability."); *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 263 F. Supp. 2d 796, 844 (D.N.J. 2003), *aff'd*, 399 F.3d 248 (3d Cir. 2005) ("only *active* human involvement with the waste is subject to liability under [the] RCRA . . .") (emphasis

---

[4] The issue of "contributor liability" under the RCRA is likely more appropriately addressed with respect to Omishakin's Rule 12(b)(6) motion, as determining the applicability of the *Ex parte Young* doctrine typically "does not include an analysis of the merits of the claim." *Verizon*, 535 U.S. at 646. However, to the extent Plaintiff relies on the RCRA's definition of "contributor liability" to establish an ongoing violation by Omishakin, the Court will briefly address the argument.

in original)). Indeed, in *Hinds*, the Ninth Circuit rejected the plaintiff's arguments that "contribute" should be applied expansively to hold the defendants liable for "assist[ing] in creating waste" even though they "[did] not actually generate or produce it." *Id.* at 850–51. Instead, the court construed contributor liability under the RCRA to require that a defendant "had a measure of control over the waste at the time of its disposal or was otherwise actively involved in the waste disposal process." *Id.* at 852. Because, at most, Plaintiff asserts passive conduct by Omishakin, it fails to establish an ongoing violation under the "contributor liability" definition.

In sum, the Court finds the connection identified by Plaintiff is too tenuous to establish an ongoing violation of federal law by Omishakin under the *Ex parte Young* doctrine.

### b) Request for Prospective Relief

Having determined Plaintiff fails to establish the first prong of the *Ex parte Young* doctrine for an ongoing violation of federal law by a state officer, the Court declines to reach the issue of whether the relief sought was prospective.

Based on the foregoing, the Court finds Plaintiff has not established the *Ex parte Young* exception to Eleventh Amendment sovereign immunity applies in this case. Moreover, in light of the facts already alleged, the Court finds further amendment would be futile. *Gardner*, 563 F.3d at 990. Plaintiff's claim against Omishakin is DISMISSED without leave to amend.

#### ii. Defendant's Remaining Arguments

In light of the Court's ruling on the inapplicability of the *Ex parte Young* doctrine, the Court does not reach Omishakin's remaining arguments under Rule 12(b)(1). Omishakin's motion is therefore GRANTED on sovereign immunity grounds.

### B. Federal Rule of Civil Procedure 12(b)(6)

In light of the Court's finding that it lacks jurisdiction on grounds of Eleventh Amendment sovereign immunity, the Court does not reach Omishakin's motion to dismiss pursuant to Rule 12(b)(6). Accordingly, the motion is DENIED as moot.

## V. CONCLUSION

For the foregoing reasons, Caltrans's Motion to Dismiss is hereby GRANTED without leave to amend. (ECF No. 5.) Omishakin's Motion to Dismiss pursuant to Federal Rule of Civil

11

Procedure 12(b)(1) is GRANTED without leave to amend.  (ECF No. 6.)  Omishakin's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is DENIED as moot.  (ECF No. 6.)

        The Clerk of the Court is directed to close this case.

        IT IS SO ORDERED.

DATED: July 14, 2021

                                    Troy L. Nunley
                                    United States District Judge